# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **BILLY J. BUXTON,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO. 16-00509-B** |
| | * | |
| **NANCY BERRYHILL,**[1] | * | |
| **Acting Commissioner of Social** | * | |
| **Security,** | * | |
| | * | |
| **Defendant.** | * | |

## ORDER

Plaintiff Billy J. Buxton (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On October 5, 2017, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 18). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the

---

[1] Nancy Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I. <u>**Procedural History**</u>[2]

Plaintiff filed his application for benefits on April 30, 2013, alleging disability beginning March 1, 2011, based on learning disability, hip problems, and knee problems. (Doc. 12 at 181, 188, 201, 204). Plaintiff's application was denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Renee Blackmon Hagler (hereinafter "ALJ") on May 20, 2015. (<u>Id.</u> at 44). Plaintiff attended the hearing with his counsel and provided testimony related to his claims. (<u>Id.</u>). A vocational expert ("VE") also appeared at the hearing and provided testimony. (<u>Id.</u>). On June 5, 2015, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (<u>Id.</u> at 29). The Appeals Council denied Plaintiff's request for review on September 1, 2016. (<u>Id.</u> at 5). Therefore, the ALJ's decision dated June 5, 2015, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument was conducted on October 26, 2017 (Doc. 21), and the parties agree that this case is now ripe for judicial review and is

---

[2] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

1. Whether substantial evidence supports the ALJ's finding that Plaintiff's bursitis of the hip was non-severe?

2. Whether substantial evidence supports the ALJ's assignment of little weight to the opinions of Plaintiff's treating physician?

3. Whether substantial evidence supports the Residual Functional Capacity?

4. Whether the ALJ erred by failing to fully develop the record by ordering consultative psychological and orthopedic examinations?

## III. Factual Background

Plaintiff was born on September 28, 1964, and was fifty years of age at the time of his administrative hearing on May 20, 2015.  (Doc. 12 at 44, 49).  Plaintiff was in regular classes in school but only completed the fifth grade.  (Id. at 49-50). Plaintiff reported that he cannot read or write, but he can make change for a twenty-dollar bill.  (Id. at 50).

Plaintiff last worked from 2004 to 2010 at BAE Systems/Atlantic Marine as a laborer, sand blaster, and painter. (Doc. 12 at 51-52).  Prior to that, he worked from 1989 to 2004 at Mitchell Company in the area of ground maintenance and Henry Marine Services on a tugboat as a deckhand.  (Id. at 51-52; Doc. 12 at 209).

Plaintiff testified that he can no longer work due to pain in his knees and his hip. (Id. at 53). His medical treatment has consisted of cortisone injections and medications such as Ibuprofen, Celebrex, and Paxil, which have provided some relief. (Id. at 53-55).

## IV. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must

---

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**V.  Statutory and Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically

found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). At the fourth step, the ALJ must make an assessment of the claimant's RFC. See Phillips v. Barnhart, 357 F. 3d 1232, 1238 (llth Cir. 2004). The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment. See Lewis v. Callahan, 125 F. 3d 1436, 1440 (llth Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

## VI.  Discussion

### A. Substantial evidence supports the ALJ's finding that Plaintiff's bursitis of the hip was non-severe.

In his brief, Plaintiff argues that the ALJ erred in finding that his bursitis of the hip was not a severe impairment. (Doc. 14 at 5-6, 8). The Commissioner counters that the ALJ's finding that Plaintiff's bursitis is non-severe is supported by substantial evidence. (Doc. 15 at 8-9). Having carefully reviewed the record in this case, the Court finds that Plaintiff's claim is without merit.

In order for an impairment to be severe, it must be more than a slight abnormality or a combination of slight abnormalities "that causes no more than *minimal* functional limitations." 20 C.F.R. § 416.924(c) (emphasis added). Indeed, it must "*significantly* limit[]" an individual's "ability to do *basic work activities*." 20 C.F.R. § 416.920(c) (emphasis added). "It is [the] Plaintiff's burden to prove the existence of a severe impairment, and she must do that by showing an impact on her ability to work." Marra v. Colvin, 2013 U.S. Dist. LEXIS 105669, *13-14, 2013 WL 3901655, *5 (M.D. Fla. 2013) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)); see also Barnhart v. Thomas, 540 U.S. 20, 24 (2003) ("At step two, the SSA will find nondisability unless the claimant shows that he has a

'severe impairment,' defined as 'any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities.'") (quoting §§ 404.1520(c), 416.920(c)); McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) ("Unless the claimant can prove, as early as step two, that she is suffering from a severe impairment, she will be denied disability benefits.").

At the outset, the Court notes that, even if Plaintiff's bursitis of the hip is severe, the ALJ's failure to classify it as a severe impairment at step two of the sequential evaluation process is not fatal. See Bennett v. Astrue, 2013 U.S. Dist. LEXIS 115951, *14, 2013 WL 4433764, *5 (N.D. Ala. 2013) ("'[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe' and, even if the ALJ erred by not recognizing every severe impairment, the error was harmless since he found at least one such impairment."); Ferguson v. Astrue, 2012 U.S. Dist. LEXIS 139135, *25, 2012 WL 4738857, *9 (N.D. Ala. 2012) ("[B]ecause step two only acts as a filter to prevent non-severe impairments from disability consideration, the ALJ's finding of other severe impairments allowed him to continue to subsequent steps of the determination process and his failure to list headaches as severe does not constitute reversible error because, under the Social Security regulations, the ALJ at later steps considers the

combined effect of all the claimant's impairments.") (emphasis in original).

In this case, the ALJ found at step two of the evaluation process that Plaintiff had the severe impairment of arthritis of the knees. (Doc. 12 at 31). After evaluating the evidence related to Plaintiff's bursitis of the hip, the ALJ determined that it was not a severe impairment. (Doc. 12 at 31-32). The ALJ then proceeded with the subsequent steps of the determination process and rendered an RFC finding, based on the record as a whole. Therefore, even if the ALJ should have found this additional impairment to be severe at step two, the error would be harmless and would provide no basis for remand.

That being said, the substantial evidence in this case supports the ALJ's finding that Plaintiff's bursitis of the hip is non-severe. Plaintiff's treatment records show that he reported moderate right hip pain and received a diagnosis of bursitis of the hip from orthopedic surgeon, Dr. Herbert Allen, M.D., on April 27, 2015. (Doc. 12 at 290-95). The record also shows that Plaintiff's treatment for this condition has been infrequent and conservative, essentially consisting of pain medication and an injection on April 27, 2015. (Doc. 12 at 262-64, 290-95). Dr. Allen's physical examination findings on April 27, 2015, also reflect normal strength (5/5) in both hips, with only "tenderness" in the greater trochanter and a positive Ober's

test (indicating a "tight" iliotibial band)[4] in the right hip. (Doc. 12 at 293). The record reflects that Dr. Allen saw Plaintiff on this one occasion and, despite Dr. Allen's instruction to return in three months, Plaintiff did not return. (Doc. 12 at 295). Also, x-rays of Plaintiff's hips taken on April 25, 2013, and April 27, 2015, reflect completely normal findings, with no noted abnormalities. (Doc. 12 at 267, 276, 289, 294). Therefore, substantial evidence supports the ALJ's finding that Plaintiff's bursitis of the hip was not a severe impairment. For each of these reasons, Plaintiff's claim must fail.

> **B. Substantial evidence supports the Residual Functional Capacity for a range of light work with the stated restrictions, as well as the ALJ's assignment of weight to the opinions of Plaintiff's treating physician.[5]**

Plaintiff also argues that the ALJ's RFC for a range of light work is not supported by substantial evidence because the ALJ gave only "some" or "little" weight to the opinions of his treating physician, Dr. Wilsania Rodriguez, M.D. (Doc. 14 at 1-2, 4, 8). The Government counters that the ALJ assigned the proper weight to Dr. Rodriguez's opinions as they are inconsistent with the substantial evidence in the case, including

---

[4] See https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2941581/

[5] Because Issues 2 and 3 are interrelated, the Court will discuss them together.

Dr. Rodriguez's own treatment records. (Doc. 15 at 3-7). Having reviewed the record at length, the Court finds that Plaintiff's claims are without merit.

Residual functional capacity (hereinafter "RFC") is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's RFC are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments, and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the plaintiff's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet his burden in this case.

As stated, Plaintiff argues that the ALJ erred in failing to give controlling weight to the opinions of his treating physician, Dr. Wilsania Rodriguez, M.D. As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-

examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). The opinion of "a one-time examining physician — or psychologist" is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). Also, an ALJ is "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with

those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

As discussed, the ALJ found that while Plaintiff has the severe impairment of arthritis of the knees, he still has the RFC to perform a range of light work with the following restrictions: Plaintiff can occasionally climb ramps and stairs, but should never climb ladders, ropes, and scaffolding. He can occasionally stoop, kneel, crouch, and crawl. He should avoid working at unprotected heights. He would have residual academic deficits or

residual psychiatric deficits, which would restrict him to simple, routine, and repetitive type tasks. (Doc. 12 at 31, 34).

Based upon the testimony of the vocational expert, the ALJ concluded that Plaintiff is not able to perform his past relevant work as a groundskeeper, deck hand, or industrial cleaner, but he can perform other work such as garment folder, bench assembler, and garment bagger (all light and unskilled). (Id. at 37-38). Thus, the ALJ found that Plaintiff is not disabled. Having reviewed the evidence at length, the Court is satisfied that the ALJ's findings related to Plaintiff's RFC and the weight accorded to the opinions of Plaintiff's treating physician are supported by substantial evidence.

First, with respect to Plaintiff's treating physician, Dr. Wilsania Rodriguez, M.D., the record shows, as the ALJ found, that Dr. Rodriguez's opinions were inconsistent with her own treatment records. According to her records, Dr. Rodriguez began treating Plaintiff on April 24, 2013, at which time she diagnosed him with right knee pain, for which she prescribed Celebrex and Tramadol. (Doc. 12 at 262). An x-ray of Plaintiff's right knee on that date showed tricompartmental narrowing of the tibial spines, subchondral sclerosis, and osteophyte formation. Dr. Rodriguez's impression was "degenerative changes of the right knee." (Id. at 267). In addition, her examination findings on that date reflect normal range of motion, no swelling, normal

strength, (5/5) bilaterally in the upper and lower extremities, no acute distress, and mild tenderness and pain on full flexion and extension of the knee. (Id. at 262, 264). Dr. Rodriguez instructed Plaintiff to return in six months. (Id.). Plaintiff returned one year later, on March 7, 2014, again complaining of right knee pain, at which time Dr. Rodriguez diagnosed him with osteoarthritis of the right knee. On physical examination, Dr. Rodriguez again found normal range of motion with tenderness and pain in the right knee with flexion and extension. (Id. at 269-70). Dr. Rodriguez renewed Plaintiff's medications, prescribed a knee brace, and instructed him to return in six months. (Id. at 270). Plaintiff returned on September 8, 2014, requesting a refill of Tramadol, at which time Dr. Rodriguez again noted normal range of motion and no swelling, apparently without tenderness or pain. (Id. at 280). Dr. Rodriguez instructed Plaintiff to continue wearing the knee brace and to take Tramadol as needed for pain. (Id.).

The following month, on October 9, 2014, Dr. Rodriguez opined in a treating source statement that Plaintiff cannot work due to "advanced osteoarthritis of the right knee which causes him to have significant pain, stiffness, decreased mobility, and intermittent swelling of this joint." (Doc. 12 at 282). In addition, in a Clinical Assessment of Pain form dated February 12, 2015, Dr. Rodriguez further opined that Plaintiff cannot work

due to pain from "osteoarthritis of the knee," which would distract him from performing work and would greatly increase with physical activity. (Doc. 12 at 283). While there is no question that Plaintiff has "degenerative changes" of the right knee, as the ALJ found, Dr. Rodriguez's treatment records reflect infrequent, conservative treatment with largely normal examination findings, which are inconsistent with the debilitating limitations opined in her treating source statement and Clinical Assessment of Pain form.

In addition to being inconsistent with her own records, Dr. Rodriguez's opinions are inconsistent with the treatment notes of orthopedic surgeon, Dr. Herbert Allen, who saw Plaintiff on April 27, 2015, for complaints of "moderate" knee pain. Dr. Allen noted that Plaintiff walked with a "waddling gait" and that he had swelling and tenderness in the knees. (Doc. 12 at 292-93). An x-ray of Plaintiff's knees taken on that date showed narrowing of the medial joint space. (Id. at 294). Upon physical examination, Dr. Allen found that Plaintiff had active range of motion in the knees bilaterally, no crepitus or pain with normal motion, normal flexion and extension, normal medial and lateral rotation, normal strength (5/5), no hamstring or quadriceps weakness, flexion (5/5), extension (5/5), negative McMurray's test, negative Apley's compression test, negative bounce home

test, and negative Steinman's displacement test.[6]   (Doc. 12 at 292-93).  Dr. Allen's diagnosis was knee pain and osteoarthritis, for which he prescribed cortisone injections in both knees, and instructed Plaintiff to use ice and Tylenol as needed for pain and to return in three months.  (Id. at 294).  That is the last treatment note in the record.  As the ALJ found, these treatment notes are inconsistent with the severity of limitations opined by Dr. Rodriguez.

The record also confirms the ALJ's findings related to Plaintiff's activities of daily living, which include taking care of his own personal needs, cooking, cleaning, washing dishes, doing laundry, mopping, vacuuming, walking the dog, and going to church.  (Doc. 12 at 58, 220-22).  Again, while there is no question that Plaintiff has the severe impairment of arthritis of the knees, the record supports the ALJ's determination that the severity of limitations expressed in Dr. Rodriguez's opinions is inconsistent with the substantial evidence in this case, as detailed above.  Therefore, the ALJ had good cause to discredit those opinions.

The Court further finds, based on the evidence detailed above, that substantial evidence supports the ALJ's finding that Plaintiff has the RFC to perform a range of light work, with the

---

[6] Dr. Allen's treatment notes related to Plaintiff's complaints of hip pain are discussed in Issue One and will not be repeated here.

stated restrictions.[7]  Indeed, Plaintiff has failed to show that any limitations caused by his impairments exceed the RFC and are not accommodated by the RFC and its stated restrictions. Accordingly, Plaintiff's claim must fail.

> **C. The ALJ did not fail to fully develop the record by failing to order consultative psychological or orthopedic examinations.**

Plaintiff also argues that the ALJ erred in failing to fulfill her duty to develop the record by ordering a consultative psychological and/or orthopedic examination.  (Doc. 14 at 9-10). The Government counters that the medical evidence in the record was sufficient for the ALJ to make an informed decision regarding the RFC, and, thus, the ALJ was not required to order any consultative examinations.  (Doc. 15 at 9-10).  Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

It is well established that a hearing before an ALJ in social security cases is inquisitorial and not adversarial.  A claimant bears the burden of proving disability and of producing evidence in support of his claim, while the ALJ has "a basic duty

---

[7] As stated, the ALJ found that Plaintiff has the RFC to perform a range of light work but that he can climb ramps and stairs only occasionally, should never climb ladders, ropes, and scaffolding, can occasionally stoop, kneel, crouch, and crawl, should avoid working at unprotected heights, and would have residual academic deficits or residual psychiatric deficits which would restrict him to simple, routine, and repetitive type tasks.  (Doc. 12 at 34).

to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); see also Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007).

In fulfilling the duty to conduct a full and fair inquiry, the ALJ has the discretion to order a consultative examination where the record establishes that such is necessary to enable the ALJ to render a decision. Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988). However, the ALJ is not required to order an additional consultative examination where the record contains sufficient evidence to permit the ALJ's RFC determination. Good v. Astrue, 240 Fed. Appx. 399, 404 (11th Cir. 2007) (unpublished) ("the ALJ need not order an additional consultative examination where the record was sufficient for a decision."); see also Ingram, 496 F.3d at 1269 ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."). Further, "there must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995) In evaluating the necessity for a remand, the Court is guided by

"whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" Id. (citations omitted).

Having reviewed the record in this case, the Court finds that the ALJ fulfilled her duty to develop a full and fair record. First, the record before the ALJ contained the medical records from the doctors who treated Plaintiff for his severe physical impairment of arthritis of the knees, and the record contains no discernible evidentiary gaps related to that impairment.

Second, Plaintiff's argument that the ALJ should have ordered a consultative psychological evaluation to determine if his mental deficits and inability to read and write would impair his ability to perform basic work activities is misplaced. (Doc. 14 at 11). The record shows that the ALJ did order a consultative mental examination, which was performed by Dr. Kimberly Zlomke Rodriguez, Ph.D., on April 2, 2015. (Doc. 12 at 285). Plaintiff reported to Dr. Rodriguez that he and most of his nine siblings could neither read nor write, that they moved around a lot as children, that they frequently missed school, and that he ultimately stopped attending school. (Id. at 285-86). Plaintiff also reported working as a landscape laborer for nearly twenty years, stating that he was fired at times for being unable to read and write. (Id.). Although Dr. Rodriguez conducted testing to determine Plaintiff's cognitive functioning, she

concluded that the results indicated malingering and poor effort. For that reason, she could make no diagnosis. However, Dr. Rodriguez opined that, "given [Plaintiff's] ability to hold conversations, answer questions, have appropriate insight, and hold employment for extended periods of time, it is extremely unlikely his intelligence is a low as he performed [and] it is unlikely that [he] is intellectually disabled." (Id. at 289).

Dr. Rodriguez's opinions related to Plaintiff's cognitive functioning are consistent with Plaintiff's long work history and with the evidence related to his wide-ranging activities of daily living. (Doc. 12 at 58, 209, 220-22, 243). Moreover, at the administrative hearing, the vocational expert was instructed by the ALJ to assume that Plaintiff had residual academic deficits or residual psychiatric deficits, which required him to be restricted to simple, routine, repetitive type tasks. (Doc. 12 at 67-68). The vocational expert opined that there were multiple jobs that he could perform. (Id.).

Based on the foregoing, the Court is satisfied that the record was sufficient to enable the ALJ to determine Plaintiff's RFC and that substantial supports the ALJ's RFC determination that Plaintiff can perform a range of light work with the stated restrictions, which fully accommodate any physical and mental limitations. Indeed, there is nothing in the record which indicates that Plaintiff's limitations exceed those in the RFC.

Therefore, Plaintiff's claim is without merit.

**VII.** <u>**Conclusion**</u>

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED**.

**DONE** this **19th** day of **March, 2018.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
